**Dorothy M. THOMPSON, et al., Appellants,**

v.

**Ralph E. KENNICKELL, Jr., Public Printer.**

No. 84–5821.

United States Court of Appeals, District of Columbia Circuit.

Argued April 3, 1986.

Decided Aug. 8, 1986.

Nora A. Bailey, with whom David M. Dorsen and Roderic V.O. Boggs, Washington, D.C., were on brief, for appellants.

Robert C. Seldon, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before WALD, Chief Judge, BORK and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

The sole issue presented in this appeal is whether 28 U.S.C. § 1961(a) requires the United States to pay post-judgment interest whenever it unsuccessfully appeals a money judgment rendered against it in a civil action. Appellants Dorothy M. Thompson, S. Vera E. Burnette, Melrie H.F. Aisquith, Shirley S. Alston and Bertha T. Gaither are the named representatives of a class of 324 journeyman bindery workers presently or formerly employed by the Government Printing Office. After successfully prosecuting a sex discrimination suit against the Government Printing Office and defending that judgment on appeal, these appellants moved the District Court for an award of post-judgment interest. Appellants argued that certain amendments to 28 U.S.C. § 1961, enacted as part of the Federal Courts Improvement Act of 1982, entitled them to this award. The District Court denied appellants' motion after concluding that the 1982 amendments to 28 U.S.C. § 1961 did not amount to a clear waiver of sovereign immunity for awards of post-judgment interest. We affirm the District Court.

## I. BACKGROUND

### A. *The District Court Litigation*

This appeal arises in the aftermath of a complex sex discrimination class action brought by women bindery workers against the Government Printing Office. In 1980, after several years of litigation, the District Court awarded the bindery workers, *inter alia*, front and back pay under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. *See Thompson v. Boyle*, 499 F.Supp. 1147 (D.D.C.1980). This court substantially affirmed the District Court's judgment. *See*

*Thompson v. Sawyer*, 678 F.2d 257 (D.C. Cir.1982).

On May 17, 1984, appellants moved the District Court under 28 U.S.C. § 1961(a) for an award of post-judgment interest on the sums paid or payable to them in satisfaction of the judgment against the Government Printing Office. Although acknowledging that this court had previously held that the United States had not waived sovereign immunity against such awards of post-judgment interest, *see Holly v. Chasen*, 639 F.2d 795 (D.C.Cir.) (per curiam), *cert. denied*, 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981), appellants argued that intervening statutory changes enacted as part of the Federal Courts Improvement Act of 1982 now authorized the payment of post-judgment interest by the United States on all federal district court judgments unsuccessfully appealed by the United States. *See* Pub.L. No. 97-164, § 302, 96 Stat. 25, 55-56 (1982).

The District Court denied appellants' motion on the ground that it was not authorized to award interest against the United States absent an express waiver of sovereign immunity. According to the District Court, the 1982 amendments to 28 U.S.C. § 1961 were not sufficiently "clear, unambiguous, express or explicit" to warrant any interpretation of the amendments as "a sweeping waiver of the government's traditional right, based on sovereign immunity, to avoid interest on judgments." *Thompson v. Barrett*, No. 74-1101, slip op. at 1, 2 (D.D.C. Sept. 7, 1984).

### B. *The No-Interest Rule*

■ Under well-settled principles of sovereign immunity, the United States cannot be sued without its consent. Courts, moreover, must strictly construe the language of purported waivers in favor of the sovereign. "[T]here can be no consent by implication or by use of ambiguous language." *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659, 67 S.Ct. 601, 603, 91 L.Ed. 577 (1947). *See also United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States*

*v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

These principles of sovereign immunity take on added force when applied to claims for interest against the United States. Interest cannot be recovered in a suit against the United States absent an express waiver of sovereign immunity from the award of interest separate from a general waiver of immunity to suit. *See Library of Congress v. Shaw,* — U.S. —, 106 S.Ct. 2957, 2959–62, 92 L.Ed.2d 250 (1986). This "no-interest rule" harkens back to the days when interest was viewed as a penalty separate and distinct from the damages arising from a substantive claim. Because interest was conceived of as a penalty, it was generally presumed not to be within the contemplation of the parties to an agreement. *See Library of Congress v. Shaw,* — U.S. at — n. 2, 106 S.Ct. at 2961 n. 2. Courts therefore required that Congress separately and affirmatively consent to an award of interest and did not read an intent to permit the recovery of interest against the United States into a general waiver of immunity from suit. *See Library of Congress v. Shaw,* — U.S. at —, 106 S.Ct. at 2961. Appellants argue that even under this rigorous standard, the Federal Courts Improvement Act of 1982 effectuated a waiver of sovereign immunity against awards of post-judgment interest.

### C. *Post-Judgment Interest Before the 1982 Act*

To properly evaluate appellants' argument, it is necessary to set forth at length the state of the law before the Federal Courts Improvement Act of 1982. Prior to its amendment by the Federal Courts Improvement Act, 28 U.S.C. § 1961 provided that:

*Interest shall be allowed on any money judgment in a civil case recovered in a district court.* Execution therefore may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.

28 U.S.C. § 1961 (emphasis supplied). Although this section, literally read, appears to have mandated the award of interest "on *any* money judgment" in a civil case in district court, we nonetheless held that the language of section 1961 was insufficient by itself to permit an award of post-judgment interest against the United States. *See Holly v. Chasen,* 639 F.2d 795, 796–97 (D.C.Cir.) (per curiam), *cert. denied,* 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981). Our holding relied on the legislative history of the predecessor to section 1961, which demonstrated that Congress did not intend its general authorization of post-judgment interest to require the payment of such interest by the United States. *See* 639 F.2d at 797.

This court found further support for its anti-waiver interpretation in three specific statutory provisions, 28 U.S.C. § 2411, 28 U.S.C. § 2516, and 31 U.S.C. § 724a. These provisions designated certain judgments against the United States on which interest would be allowed and established both the rate of interest and the time period during which such interest would be payable. As we explained in *Holly,* "If 28 U.S.C. § 1961 is read to confer an automatic entitlement to interest at the rate provided by state law on all civil judgments against the United States, these very detailed statutory provisions will all become superfluous." 639 F.2d at 797–98.

Before turning to appellants' argument it is also necessary to lay out the fairly complicated statutory scheme governing awards of interest against the federal government incorporated in the three statutory provisions cited in *Holly v. Chasen.* These statutes permitted the award of interest against the federal government in *four* classes of cases: (1) Internal Revenue cases; (2) Federal Tort Claims Act cases; (3) Tucker Act cases seeking damages of less than $10,000; and (4) Court of Claims cases. The interest rate paid by the feder-

al government and the time period during which it was liable for interest varied dramatically depending on which of these four types of cases was involved.

The potential liability of the United States for interest was greatest in judgments rendered against it for overpayment of taxes. In such cases the United States was liable for both pre-judgment and post-judgment interest. Subsection (a) of 28 U.S.C. § 2411 provided that such interest was payable from the date of the payment or collection of the tax to a date preceding by not more than thirty days the date of the refund check. The interest rate in tax overpayment cases was the "adjusted prime rate" established by the Secretary of the Treasury under section 6621 of the Internal Revenue Code. *See* 26 U.S.C. § 6621.

An entirely different interest rate and time period governed post-judgment interest awards on judgments against the United States under the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2674. Subsection (b) of 28 U.S.C. § 2411 fixed the interest rate on such judgments at 4% per annum and provided that interest would run "from the date of the judgment up to, but not exceeding, thirty days after the date of approval of any appropriation Act providing for payment of the judgment." 28 U.S.C. § 2411(b). The time period set forth in subsection (b) of 28 U.S.C. § 2411 was further limited by 31 U.S.C. § 724a. Section 724a created a permanent appropriation for satisfaction of certain judgments against the United States, including Little Tucker Act and FTCA claims. It provided in pertinent part that:

> whenever a judgment of a district court to which the provisions of section 2411(b) of Title 28 apply, is payable from this appropriation, *interest shall be paid* thereon only when such judgment becomes final after review on appeal or petition by the United States, and then *only from the date of the filing of the transcript thereof in the General Ac-*

> *counting Office to the date of the mandate of affirmance....*

31 U.S.C. § 724a (emphasis supplied). Courts resolved the apparent conflict between 31 U.S.C. § 724a and 28 U.S.C. § 2411(b) by holding that the time period set forth in 31 U.S.C. § 724a overrode the period contained in 28 U.S.C. § 2411(b) and thus limited the period during which the federal government would be liable for post-judgment interest. *See United States v. Maryland,* 349 F.2d 693, 694 (D.C.Cir. 1965); *see also Reminga v. United States,* 695 F.2d 1000, 1002 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983); *Rooney v. United States,* 694 F.2d 582, 583 (9th Cir.1982).

Prior to the Federal Courts Improvement Act of 1982, judgments against the United States in the Court of Claims were subject to yet other terms concerning post-judgment interest. 28 U.S.C. § 2516(b) provided that interest on such judgments affirmed by the Supreme Court "shall be paid at the rate of four percent per annum from the date of the filing of the transcript of the judgment in the Treasury Department to the date of the mandate of affirmance." 28 U.S.C. § 2516(b). The United States was thus liable for post-judgment interest only during the period that it appealed its adverse judgment to the Supreme Court.

In sum, prior to the Federal Courts Improvement Act of 1982, section 1961 authorized awards of post-judgment interest only against private parties. The United States was liable for interest on judgments against it only in specific instances and pursuant to different statutory provisions. Furthermore, the rate of interest and the time period during which the federal government might be obligated to pay such interest varied widely depending on the nature of the judgment against it.

### D. *The 1982 Statutory Changes*

With this statutory backdrop in place, we turn now to the changes enacted by the Federal Courts Improvement Act of 1982. That Act established the United States Court of Appeals for the Federal Circuit by

combining the appellate functions of the Court of Claims with the Court of Customs and Patent Appeals, and created a new United States Claims Court to handle the trial jurisdiction of the former Court of Claims. The Act also adopted certain transfer procedures to cure want of jurisdiction and provided for a nationally applicable rate of interest for calculating post-judgment interest awards.

In this appeal we are concerned only with section 302 of the Federal Courts Improvement Act. That provision accomplished three things. First, it substantially amended 28 U.S.C. § 1961, which had previously applied only to awards of post-judgment interest against private litigants. Section 1961 as amended presently provides:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
>
> (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.
>
> (c)(1) This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at a rate established under section 6621 of the Internal Revenue Code of 1954 [26 U.S.C. § 6621].

> (2) Except as otherwise provided in paragraph (1) of this subsection, interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal circuit [sic], at the rate provided in subsection (a) and as provided in subsection (b).
>
> (3) Interest shall be allowed, computed, and paid on judgments of the United States Claims Court only as provided in paragraph (1) of this subsection or in any other provision of law.
>
> (4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

28 U.S.C. § 1961. The 1982 amendments to 28 U.S.C. § 1961 incorporated the previously existing statute as subsection (a) and then added subsections (b) and (c). The amendments also substituted a nationally uniform rate for post-judgment interest in subsection (a) for the rate previously set only by reference to state law.

Section 302 of the Federal Courts Improvement Act also amended 28 U.S.C. § 2516(b) to modify the interest rate applicable to those Claims Court judgments against the United States affirmed by the Supreme Court. The 1982 amendments replaced the former 4% interest rate with the same nationally uniform rate newly set forth in 28 U.S.C. § 1961(a). Finally, section 302 of the 1982 Federal Courts Improvement Act also repealed subsection (b) of 28 U.S.C. § 2411, which had previously authorized awards of post-judgment interest against the United States in FTCA and Little Tucker Act cases, and deleted the reference to 28 U.S.C. § 2411(b) from 31 U.S.C. § 724a, the permanent judgment appropriation statute.

## II. APPELLANTS' ARGUMENTS ON APPEAL

Appellants advance three independent arguments in support of their contention that these statutory changes authorize the payment of post-judgment interest on all federal district court judgments which the federal government unsuccessfully appeals. First, appellants look to the plain language

of 28 U.S.C. § 1961. Second, appellants cite the legislative history as evidencing a clear congressional intent to waive sovereign immunity against post-judgment interest on all unsuccessfully appealed district court judgments. Finally, appellants contend that unless the general language of 28 U.S.C. § 1961(a) is interpreted to provide for post-judgment interest on FTCA and Tucker Act judgments, the repeal of section 2411(b) of Title 28 of the U.S. Code will restrict the previous availability of such post-judgment interest, a clear violation of congressional intent. Ultimately, we reject all three of appellants' arguments: neither the language of 28 U.S.C. § 1961, as amended, nor its legislative history meets the stringent standards for waiver of the sovereign immunity of the United States with respect to post-judgment interest. Absent a clearly manifested congressional decision to waive the traditional "no-interest rule" in government suits, we cannot award post-judgment interest in this case. We also do not find appellants' ingenious argument based on the repeal of section 2411(b) sufficiently compelling. We simply cannot conclude that Congress meant to effect such a dramatic expansion of

government liability for post-judgment interest in so subtle a manner.

### A. The Plain Language of Section 1961

Although section 1961(a) even as amended still does not expressly refer to judgments awarded against the federal government, appellants argue that the addition in 1982 of subsections (b) and (c) makes an interpretation of section 1961(a) which includes interest on government appeals obligatory under the plain meaning rule. We turn first to the addition of subsection (b) to section 1961. New subsection (b) provides that post-judgment interest shall be computed daily from the date of judgment to the date of payment, *except* as provided by 28 U.S.C. § 2516(b), which governs the time period for post-judgment interest paid by the United States on unsuccessful appeals to the Supreme Court from Federal Circuit decisions, and as provided by 31 U.S.C. § 1304(b), which governs the time period for the payment of post-judgment interest when otherwise authorized by law on judgments against the United States payable out of the permanent judgment appropriation fund.[1] Under these two ex-

---

1. 31 U.S.C. § 1304(b) is the present codification of the provision formerly found at 31 U.S.C. § 724a. Before the effective date of the Federal Courts Improvement Act, Congress revised and renumbered 31 U.S.C. § 724a. These revisions took effect on the same day as the Federal Courts Improvement Act. *See* Pub.L. No. 97–258, § 2(m), 96 Stat. 877, 1062 (1982). As presently drafted, 31 U.S.C. § 1304 provides in relevant part:

    (a) Necessary amounts are appropriated to pay final judgments, awards, compromise settlements, and *interest* and costs specified in the judgments or *otherwise authorized by law* when—
    
    (1) payment is not otherwise provided for;
    (2) payment is certified by the Comptroller General; and
    (3) the judgment, award, or settlement is payable—
    
    (A) under section 2414, 2517, 2672, or 2677 of title 28 [*i.e.*, almost all final judgments by district courts, the United States Claims Court and the Court of International Trade];
    (B) under section 3723 of this title;
    (C) under a decision of a board of contract appeals; or
    (D) in excess of an amount payable from the appropriations of an agency for a merito-

    rious claim under section 2733 or 2734 of title 10, section 715 of title 32, or section 203 of the National Aeronautics and Space Act of 1958 (42 U.S.C. 2473).

    (b)(1) Interest may be paid from the appropriation made by this section—
    
    (A) on a judgment of a district court, only when the judgment becomes final after review on appeal or petition by the United States Government, and then only from the date of filing of the transcript of the judgment with the Comptroller General through the day before the date of the mandate of affirmance; or
    
    (B) on a judgment of the Court of Appeals for the Federal Circuit or the United States Claims Court under section 2516(b) of title 28, only from the date of filing of the transcript of the judgment with the Comptroller General through the day before the date of the mandate of affirmance.
    . . . .

    31 U.S.C. § 1304 (emphasis supplied).

    Appellants argue that section 1304(b) permits the payment of post-judgment interest on all judgments payable from this appropriation fund. This argument ignores the clear language in section 1304(a) that restricts the payment of

ceptions to the daily computation of interest, post-judgment interest is payable only for the limited time period running from the filing of the transcript of the judgment with the Comptroller General to the date of the mandate of affirmance, *i.e.*, only during the period of an appeal by the federal government. Appellants argue that if section 1961(a) did not require the federal government to pay post-judgment interest, it would have been unnecessary to create these exceptions to the daily computation of post-judgment interest in section 1961(b).

This argument overreads section 1961(b). Section 1961(b) does not state that interest *under section 1961(a)* shall be computed daily except as provided in 28 U.S.C. § 2516(b) and 31 U.S.C. § 1304(b). Section 1961(b) does not explicitly restrict itself to payments of post-judgment interest under section 1961(a) but rather sets out the time period during which post-judgment interest runs, regardless of the statutory source of the duty to pay such interest.[2] Section 1961(b), at best ambiguous, does not support an express waiver of the sovereign immunity of the United States against awards of post-judgment interest in all unsuccessfully appealed district court judgments.[3] A court must construe waivers strictly in favor of the sovereign and may not enlarge a waiver "beyond what the language requires." *Library of Congress v. Shaw*, —— U.S. at ——, 106 S.Ct. at 2962 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983)).

This principle of statutory construction is mandated by section 1961 itself. Subsection (c)(4) of section 1961 explicitly announces that:

This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

Section 1961 does not specifically authorize the award of interest on all judgments against the United States. Moreover, even if we ignored our clear obligation to resolve any ambiguities in section 1961 against the waiver of sovereign immunity, we could not adopt appellants' reading of the statute. As we shall demonstrate in Part II.B of this opinion, *infra*, the legislative history of the Federal Courts Improvement Act supplies virtually no support for appellants' interpretation of this ambiguous provision.

Appellants point next to the addition of subsection (c)(1) to section 1961 as an indication that the United States waived its sovereign immunity in section 1961(a). This second "plain meaning" argument also fails. New subsection (c)(1) of section 1961 provides that section 1961 shall not apply in any judgment of any court with respect to an internal revenue tax case. Section 1961(c)(1) sets the interest rate for such claims at the rate established under 26 U.S.C. § 6621, *i.e.*, the adjusted prime rate. Appellants argue that if new section 1961(a) did not require the payment of post-judgment interest on all district court judgments against the federal government, the exception provided in section 1961(c)(1) would be superfluous.

This argument is flawed in numerous respects: First, it ignores the fact that

---

interest under the fund to interest "specified in the judgment [ ] or otherwise authorized by law." Section 1304 thus refers to statutory provisions other than itself to determine when the United States must pay post-judgment interest.

**2.** Various statutory sources authorizing awards of post-judgment interest include 28 U.S.C. § 1961(a), 28 U.S.C. § 2516(b), and 28 U.S.C. § 2412(f).

**3.** The viability of appellants' argument, however, hinges on their ability to read section 1961(b) as an explicit exception to a generally applicable rule set out in section 1961(a). The mere existence of potentially overlapping statu-

tory provisions governing awards of post-judgment interest will not support a general waiver of sovereign immunity under appellants' plain-meaning argument. *Cf. Holly v. Chasen*, 639 F.2d 795 (D.C.Cir.) (per curiam), *cert. denied*, 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981). The present provisions for the payment of post-judgment interest by the United States in tax cases, Federal Circuit cases, and on certain judgments payable out of the permanent appropriation fund would not by themselves indicate that 28 U.S.C. § 1961(a) waives sovereign immunity for post-judgment interest on all unsuccessfully appealed district court judgments.

subsection (c)(1) is necessary to exempt private taxpayers from the interest provisions of subsection (a). Since 1975, taxpayers have been required to pay interest on underpayments of taxes at the rate specified in section 6621 of the Internal Revenue Code. *See* 26 U.S.C. § 6601(a); *see also* Pub.L. No. 93–625, § 7(a)(2)(A), 88 Stat. 2108, 2115 (1975). Subsection (c)(1) is not therefore relegated to the category of "mere surplusage" if section 1961(a) does not apply to the federal government.

Appellants' argument also misreads section 1961(c)(1) as operating solely to exclude tax cases from the application of the interest rate contained in subsection (a). Section 1961(c)(1) excludes the application not only of the rate announced in subsection (a), however, but also of the timing provisions announced in subsection (b) of section 1961. Section 1961(c)(1) is further necessary to exempt tax cases from section 1961(c)(2), which provides the general terms on which the United States shall be liable for post-judgment interest on appeals which it takes from decisions in the Federal Circuit. Section 1961(c)(1) would be necessary even if there was no section 1961(a) at all. In sum, we find in section 1961(b) and section 1961(c)(1) no persuasive indication that section 1961(a) waives sovereign immunity for post-judgment interest on all judgments against the United States in district court. Appellants' reading of the statute is not necessary to avoid making either subsection superfluous.[4] We therefore cannot find in the plain meaning of section 1961 any waiver of the no-interest rule for unsuccessful appeals from all district court judgments.

B. *The Legislative History of the Federal Courts Improvement Act*

An examination of the legislative history of the Federal Courts Improvement Act, moreover, indicates that any ambiguity in the language of section 1961 should be resolved against expansion of the liability of the United States for post-judgment interest. The intent of Congress in adopting this portion of the Federal Courts Improvement Act was only to set a nationally uniform rate governing post-judgment interest in all cases, except tax cases, where post-judgment interest was already available. Congress gave no indication that it intended for the first time to make such interest uniformly available against the United States. Appellants would unjustifiably escalate the modest legislative goal of a uniform rate for post-judgment interest into an unprecedentedly broad goal of universal entitlement to awards of post-judgment interest against public and private litigants alike.

The changes effected by the Federal Courts Improvement Act on which appellants rely for purposes of this appeal are found exclusively in section 302 of Title III of that Act. We shall accordingly limit our examination of the legislative history to Title III. *See* Pub.L. No. 97–164, § 302, 96 Stat. 25, 55–56 (1982). The House version of what eventually became the Federal Courts Improvement Act, H.R. 4482, contained no provision comparable to the eventual Title III. *See* H.R. 4482, 97th Cong., 1st Sess., 127 Cong.Rec. 27,785–91 (1981). The original Senate bill, S. 1700, contained detailed provisions establishing a nationally uniform interest rate on federal court judgments that was keyed to the prime interest rate. The bill also provided for the award of pre-judgment interest and made changes in the provisions governing awards of post-judgment interest against the federal government. *See* S. 1700, 97th Cong., 1st Sess. § 302, 127 Cong.Rec. 23,093–94 (1981).

Appellants' legislative history argument depends on a single clause in the original

---

**4.** Appellants' reading of the statute would also result in contradictory directives regarding the payment of post-judgment interest in patent and certain Tucker Act cases, *i.e.,* cases originally brought in district court and appealed to the Federal Circuit. *See* 28 U.S.C. § 1295(a). Under 28 U.S.C. § 1961(a) the United States would be required to pay interest for the entire period of its appeal, whereas under 28 U.S.C. § 1961(c)(2) the United States would be required to pay interest only during its unsuccessful appeal to the Supreme Court.

Senate bill that would have amended 28 U.S.C. § 1961 to include a provision that:

> Except [in tax cases], *interest shall be allowed on all final judgments against the United States* (including judgments of the United States Claims Court) as provided in subsections (a) [setting the rate of post-judgment interest equal to the prime interest rate] and (b) [providing for pre-judgment interest].

S. 1700, 97th Cong., 1st Sess. § 302(a)(3), 127 Cong.Rec. 23,093 (1981) (emphasis supplied). Appellants argue that this provision in the original Senate bill evidences a clear congressional intent to waive sovereign immunity which should inform our interpretation of any ambiguities in 28 U.S.C. § 1961.

This clause, however, was amended out of existence on the Senate floor by unprinted amendment 766. That amendment substituted in its stead the language presently contained in 28 U.S.C. § 1961(c)(2). That language provides:

> Except [in tax cases], *interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal Circuit,* at the rate provided in [28 U.S.C. § 1961(a)] and as provided in [28 U.S.C. § 1961(b)].

*See* 127 Cong.Rec. 29,865–67 (1981) (emphasis supplied). It was this amended version of S. 1700 that was considered by the House at the informal House-Senate staff conference that resolved the differences between S. 1700 and H.R. 4482, *see* 127 Cong. Rec. 29,875 (1981), and it was also this version that the House eventually passed. *See* 128 Cong.Rec. 3,562–72 (1982).

The simplest explanation for the Senate's deletion of the provision relied on by appellants is that the Senate chose not to expand the availability of post-judgment interest against the federal government. Appellants assert, however, that the failure of either house of Congress to adopt the provision explicitly requiring the government to pay post-judgment interest in all unsuccessful appeals from district court judgments was a mere technical omission. Under this theory, the original Senate bill

provision continues to be probative of the final congressional intent expressed in the Federal Courts Improvement Act. Appellants' argument misses the mark in numerous respects. In the first place, appellants have provided no theory by which we could impute to the House of Representatives the Senate's "inadvertence" in deleting its provision for the award of post-judgment interest against the United States in all unsuccessful appeals from district court judgments. The legislative history provides no indication that the House ever considered a provision similar to the Senate's. This by itself is sufficient to bar appellants' argument, as a statute must, of course, be ratified by both congressional houses.

Additionally, however, the appellants have offered no compelling evidence that the Senate acted inadvertently when it deleted its general provision for post-judgment interest against the United States. We note at the outset the highly unusual nature of what appellants are asking this court to do. When faced with a congressional amendment deleting a provision from a bill under consideration, courts typically assume that Congress knows the content of its amendment and therefore intends the deletion. In support of their argument that the deletion of the provision requiring payment of post-judgment interest by the federal government in all cases was a mere technical omission, appellants cite the debate over unprinted amendment 766. This amendment was offered by Senator Grassley in response to concerns expressed by the Office of Management and Budget (OBM). Appellants first point out that the OMB correspondence which provided the impetus for the amendment did not request the disallowance of such post-judgment interest and that deletion of the provision was not necessary to take account of any concern actually expressed by the administration. Appellants also offer as evidence of inadvertence the fact that the sponsor of amendment 766 never disclosed to his Senate colleagues that the effect of his amendment would be to overrule the Senate bill provision awarding

post-judgment interest against the government on all district court judgments.

■ This evidence in support of the purported technical omission is wholly insufficient to overcome the traditional rule that Congress understood the content of its amendment. Where Congress has deleted an explicit substantive provision of a bill, appellants must come up with some stronger indication of inadvertence than mere silence. This is especially true where appellants are asking this court to read a waiver of sovereign immunity back into a statute where Congress explicitly deleted that waiver. The general rule is that congressional silence does not permit a court to find the requisite waiver of sovereign immunity with respect to awards of post-judgment interest. *See Library of Congress v. Shaw*, — U.S. at —, 106 S.Ct. at 2962. Appellants' inadvertence argument perverts the traditional rule that waivers of sovereign immunity must be express and must be strictly construed. *E.g., Holly v. Chasen*, 639 F.2d at 796–97.

The only other potential evidence of inadvertence available to appellants is one ambiguous statement by Senator Grassley. In his explanation of the present provision codified at 28 U.S.C. § 1961(c)(2) providing that the United States shall pay post-judgment interest on unsuccessful appeals to the Supreme Court from Federal Circuit judgments, Senator Grassley said:

> Thus, interest would accumulate only from the date of final judgment by the U.S. Court of Appeals for the Federal Circuit. Although *the new Claims Court would be placed in the unique position that does not apply to the judgments of the several district courts,* the amendment does retain the status quo with respect to accumulation of interest on judgments of the Court of Claims.

127 Cong.Rec. 29,865 (1981) (emphasis supplied).

This statement does not explicitly say that all district court judgments against the United States will bear post-judgment interest. Given its context, we find more plausible an interpretation of Senator Grassley's remark as a reference to the fact that some district court judgments against the United States continued to bear post-judgment interest while no Claims Court judgment did. At any rate, this single ambiguous remark cannot overcome the deadening silence surrounding the deletion of the Senate provision relied on by appellants to show that at least one branch of Congress meant to broaden the post-judgment interest coverage against the United States.

Rather than revealing a technical omission in the deletion of the general provision for post-judgment interest against the government, the legislative history actually reinforces the obvious import of the Senate's deletion of its waiver of sovereign immunity. The legislative history suggests that the never-enacted provision might itself have been a "technical omission." Although the evidence of such inadvertance in the legislative history would almost assuredly be insufficient to permit a court to set aside the obvious meaning of a statute actually passed by Congress, it need not be totally ignored when appellants ask us to set aside Senator Grassley's amendment and restore to the bill a deleted provision.

Every item in the legislative history other than the language of the deleted provision indicates that the Senate itself was unaware that its original bill would have expanded the liability of the federal government for post-judgment interest. Senator Dole's introductory statement describes the provisions for post-judgment interest against the government as a consolidation, not as an expansion. The bill "consolidate[d] into one statute the three provisions of Title 28 of the United States Code dealing with the award of interest on judgments. Consequently the provisions of this bill for ... a new interest rate on judgments will apply uniformly to suits between private litigants and to suits against the government." 127 Cong.Rec. 23,097 (1981) (statement of Sen. Dole). Senator Dole's introductory remarks demonstrate that a single uniform rate would apply to

all awards of post-judgment interest.[5] They in no way suggest that post-judgment interest would become available against the federal government in every case in which it would be available against a private party.

The Committee Report accompanying S. 1700 similarly refers to the bill only as a consolidation of existing provisions. *See* S.Rep. No. 275, 97th Cong., 1st Sess. 12, 30 (1981) U.S.Code Cong. & Admin.News 1982, pp. 11, 22, 40.[6] Again, it is the rate rather than the availability of post-judgment interest that has been made uniform. The Senate Report, moreover, contains two significant indications that the Senate never did contemplate expanding the waiver of sovereign immunity. First, the Report contains a letter from the Congressional Budget Office estimating the expenses associated with the bill. According to this letter, "the only expenses associated with the bill will be for travel and transportation, attorney fees, and some personnel changes. These items are expected to total less than $70,000." S.Rep. No. 275, 97th Cong., 1st Sess. 32 (1981), U.S.Code Cong. & Admin. News 1982, p. 42. The Congressional Budget Office's letter took no account of the massive increase in the government's liability for post-judgment interest which appellants would read into the bill.

The second important manifestation of the Senate's actual intention with regard to a waiver of sovereign immunity is found in a section of the Report entitled "Changes in Existing Law." In this section the Senate is usually required by its own Standing Rules to explicate all changes in existing laws made by the bill. The Judiciary Committee, however, felt justified in dispensing with this requirement because the statement contained in the House Report on H.R. 4482, the House version of S. 1700, would be "essentially the same as S. 1700."

S.Rep. No. 275, 97th Cong., 1st Sess. 33 (1981), U.S.Code Cong. & Admin.News 1982, p. 43. The Senate committee was able to arrive at this conclusion even though H.R. 4482 contained absolutely no provisions concerning payment of post-judgment interest by the United States or private litigants.

To sum up, we cannot view the Senate's deletion of the provision relied on by appellants as any mere technical omission to be overlooked in the face of an otherwise clear congressional intent to waive the no-interest rule in all district court judgments appealed by the United States. The technical omission theory finds no support in the legislative history. Instead, the overall legislative history, including the deletion of the provision relied on by appellants, persuades us that Congress never intended to expand its waiver of sovereign immunity but only to consolidate its already existing waivers.

### C. *The Repeal of 28 U.S.C. § 2411(b)*

Appellants' final argument on appeal hinges on the repeal of 28 U.S.C. § 2411(b). Before Congress passed the Federal Courts Improvement Act, section 2411(b) provided for the award of post-judgment interest against the United States in all actions, except tax actions, instituted under 28 U.S.C. § 1346. This meant liability for post-judgment interest primarily in FTCA cases and Little Tucker Act cases. According to the appellants, the repeal of this provision simultaneously with the amendment of 28 U.S.C. § 1961 suggests that Congress intended section 1961(a) as amended to include the award of post-judgment interest on FTCA and Tucker Act judgments against the federal government. Appellants invoke the presumption against implied repeal of remedial provisions and argue that it is extremely unlikely that

---

**5.** Senator Dole's original bill would have provided that the interest rate specified in section 6621 of Title 26 (the adjusted prime rate) would apply to all awards of post-judgment interest.

**6.** The Report's Section-By-Section Analysis explains that "by consolidating all the provisions

for interest on judgments of Title 28 into this section, this rate becomes uniformly applicable to all litigation in the Federal courts." *See* S.Rep. No. 275, 97th Cong., 1st Sess. 30 (1981), U.S.Code Cong. & Admin.News 1982, p. 40.

Congress intended to furtively eliminate the right to receive post-judgment interest on FTCA and Tucker Act judgments, where such interest had been available for years. According to appellants, unless the general language of 28 U.S.C. § 1961(a) extends to judgments against the United States under the Tucker Act and the FTCA, which it could only do if it applied to all judgments against the United States in district court, the Federal Courts Improvement Act secretly effected an anomalous retrenchment on the availability of post-judgment interest awards against the United States.

*Library of Congress v. Shaw* forecloses this argument. We need not today decide the extent, if any, to which the Federal Courts Improvement Act curtails previously available post-judgment interest on judgments against the United States under the FTCA and the Tucker Act.[7] Even if Congress did not intend to eliminate the liability of the United States for post-judgment interest in FTCA and Tucker Act cases, this does not mean that Congress affirmatively contemplated an expansion of the liability of the United States for post-judgment interest. The waiver of immunity for an award of interest must be affirmatively and separately contemplated by Congress. *See Library of Congress v. Shaw,* —— U.S. at ——, 106 S.Ct. at 2961. Appellants' argument, however, rests on a waiver by implication and must therefore be rejected.[8]

### CONCLUSION

After careful review of the language of 28 U.S.C. § 1961 and the legislative history of the Federal Courts Improvement Act of 1982, we find no sufficiently unambiguous waiver of sovereign immunity against the award of post-judgment interest on district court judgments unsuccessfully appealed by the United States. In so concluding we join the three other circuits that have considered the effect of 28 U.S.C. § 1961(a), although we arrive at our conclusion through somewhat different analysis. *See International Woodworkers of America, Local 3–98 v. Donovan,* 769 F.2d 1388, 1392 (9th Cir.1985); *Arvin v. United States,* 742 F.2d 1301, 1304 (11th Cir.1984); *Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board,* 735 F.2d 895, 902 (5th Cir.1984). We also note that recent congressional action tends to confirm our interpretation of 28 U.S.C. § 1961(a). In 1985, Congress adopted 28 U.S.C. § 2412(f) which provides for the payment of post-judgment interest when the United States appeals an award of costs or attorneys' fees awarded under the Equal Access to Justice Act. *See* Pub.L. No. 99–80, § 2(e), 99 Stat. 183, 185–86 (1985). If interest on such district court judgments had already been available under 28 U.S.C. § 1961(a), the addition of subsection (f) to 28 U.S.C. § 2412 would have been superfluous. Accordingly, for the reasons previously set forth in this opinion, the judgment of the District Court is

*Affirmed.*

---

**7.** We do note, however, that appellants' argument certainly overstates the extent, if any, to which the Federal Courts Improvement Act might be read to cut back on the availability of post-judgment interest. Because Little Tucker Act cases are appealed to the Federal Circuit, *see* 28 U.S.C. § 1295(a)(2), it is clear that the United States is still liable for post-judgment interest in Tucker Act cases whenever it appeals from a judgment of the Federal Circuit. *See* 28 U.S.C. § 1961(c)(2).

**8.** Because we find that the Federal Courts Improvement Act of 1982 cannot be read as a waiver of sovereign immunity permitting awards of post-judgment interest on any unsuccessfully appealed judgment against the United States, we need not reach the additional questions raised by appellants concerning the retroactive application of the 1982 amendments to section 1961 and the proper calculation of the amount of interest which would have to be awarded thereunder.