**In re Al G. HUSHER.**

**No. CV 91–0077.**

United States District Court,
E.D. New York.

Sept. 13, 1991.

A. Scott Mandelup, Mineola, N.Y., for debtor.

Eugene J. Rossi, Tax Div., U.S. Dept. of Justice, Washington, D.C., Andrew J. Maloney, U.S. Atty. by Roseann Harvey, Asst. U.S. Atty., Brooklyn, N.Y., for I.R.S.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced bankruptcy proceeding, the United States appeals from an Order of Bankruptcy Judge Robert Hall which held the Internal Revenue Service ("IRS") liable to Robert L. Pryor ("Pryor" or "trustee"), the trustee in bankruptcy of Al G. Husher ("Husher" or "the debtor"), for transfers of property which were void as preferences pursuant to 11 U.S.C. § 547. More particularly, the United States contends that it did not waive its immunity to be sued, and that the trustee was not entitled to receive interest on monies recovered as preferential transfers. For the reasons stated below, the determination of the bankruptcy court is affirmed in part and reversed in part.

### BACKGROUND

On July 6, 1987, Husher filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Based on Husher's remaining income tax liabilities for the 1980–1982 tax years, the IRS delivered a notice of levy to the New York City Transit Authority, Husher's employer, and Jamaica Savings Bank, the holder of a life insurance policy owned by Husher. Pursuant to the levies, the Transit Authority ultimately delivered $2,773.02 to the IRS, and Jamaica Savings Bank turned over the $6,954.58 available cash value of Husher's life insurance policy. It is to be noted that all of those transfers occurred within the ninety days preceding the filing of Husher's Chapter 7 petition. *See* 11 U.S.C. § 547(b)(4).

On July 19, 1989, Pryor, as trustee, initiated an adversary proceeding by filing a summons and complaint against the IRS. By the complaint, the trustee sought, *inter alia,* a judgment that the transfers to the IRS by Jamaica Savings Bank and the Transit Authority were void as preferences, pursuant to 11 U.S.C. § 547. Thus, the trustee sought to regain the sum of $9,727.60, together with interest, reasonable attorney's fees, costs and disbursements.

Both parties agreed to substitute the United States for the IRS as the party defendant. The United States alleged as an affirmative defense that it did not waive its sovereign immunity to be sued for the funds involved. On May 10, 1990, the trustee moved to dismiss the United States' sovereign immunity defense and for summary judgment; the United States subsequently cross-moved for summary judgment.

After oral argument on November 5, 1990, the bankruptcy court held, *inter alia,* that the transfers made by the Transit Authority and Jamaica Savings Bank were void as preferences, and entered judgment in favor of the trustee in the amount of $9,727.60, plus interest in the amount of $1,108.28. As noted above, the United States currently appeals that determination of the bankruptcy court.

### DISCUSSION

According to Bankruptcy Rule 8013, "[o]n an appeal, the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, ... or remand with instructions for further proceedings ... [f]indings of fact, ... shall not be aside unless clearly erroneous,...." As to conclusions of law, the district court " 'must make an independent determination of the applicable law.' " *Musso v. Tesmetges,* 47 B.R. 385, 388 (E.D.N.Y.1984) (citations omitted). With respect to the appeal herein, the central issue of whether the pertinent portion of the Bankruptcy Code effects a waiver of the federal government's

sovereign immunity presents a legal question which calls for this Court to undergo its own analysis of the applicable law.

■ The government argues that the doctrine of sovereign immunity precludes the trustee from bringing this action. It is well settled that the United States is a sovereign and is immune from suit absent its prior consent. *United States v. Shaw*, 309 U.S. 495, 500–501, 60 S.Ct. 659, 661–662, 84 L.Ed. 888 (1940); *Akers v. United States*, 539 F.Supp. 831, 832 (D.Conn.1982) (citation omitted), *aff'd*, 718 F.2d 1084 (2d Cir.1983). The government further asserts that it did not take the "affirmative step" of filing a proof of claim against the debtor, and consequently did not make itself amenable to suit by subjecting itself to the jurisdiction of the bankruptcy court.

Under the Bankruptcy Code, Congress has waived the government's sovereign immunity with respect to certain causes of action. More specifically, 11 U.S.C. § 106 provides that:

> (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

> (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

> (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

>> (1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and

>> (2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106 ("§ 106"). Under the Code, the United States is a "governmental unit." 11 U.S.C. § 101(27).

In the instant case, neither § 106(a) nor § 106(b) provides a basis for a waiver of the United States' sovereign immunity, in that the United States did not initiate the bankruptcy proceeding by filing a claim. Rather, respondent asserts that the United States is subject to suit based on § 106(c). For the reasons stated below, this Court agrees.

■ The adversarial proceeding from which this appeal resulted was commenced pursuant to 11 U.S.C. § 547. That section enables a trustee to avoid any transfer of property "to or for the benefit of a creditor" if the remaining prerequisites of the section are satisfied. *Id.* at § 547(b). Since this provision contains the word "creditor", it comes within the scope of § 106(c). Therefore, in the case at bar, notwithstanding its assertion of sovereign immunity, the government is bound by the bankruptcy court's determination that the IRS levies were void as preferences.

Bankruptcy courts have held that preference actions commenced pursuant to 11 U.S.C. § 547 effectuate the federal government's waiver of sovereign immunity under 11 U.S.C. § 106(c). *See Community Hospital of Rockland County*, 15 B.R. 785 (Bankr.S.D.N.Y.1981); *In re Remke, Inc.*, 5 B.R. 299 (Bankr.E.D.Mich.1980). In *Community Hospital*, the IRS moved to dismiss a trustee's action which asserted that the IRS improperly levied monies from the debtor's obligors to collect a tax indebtedness. The government argued that section 106(c) did not waive federal sovereign immunity for an action under § 547 unless the government filed a proof of claim. The court rejected this argument and held that "[t]here is no language in [11 U.S.C.] subsection (c) requiring the Government to file a claim as a condition precedent to the waiver of sovereign immunity with respect to the avoiding powers". 15 B.R. at 789–90. Thus, the court found the IRS to be amenable to suit.[1]

---

**1.** The Second Circuit has also recognized that § 106(c) does not immunize the government from liability in bankruptcy actions when the government chooses not to file a claim. In *In re*

*Willington Convalescent Home, Inc.*, 850 F.2d 50 (2d Cir.1988), *aff'd sub nom. Hoffman v. Connecticut Dep't. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), the

In addition, the legislative history of 11 U.S.C. § 547 clearly exhibits a congressional intent to waive federal sovereign immunity in such a proceeding. *See* 124 Cong. Rec. 34000 (Sept. 28, 1978) (noting that "... section 106(c) of the House amendment overrules contrary language in the House report with the result that the Government is subject to avoidance of preferential transfers").

The United States relies primarily upon *Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), to support its position that § 106(c) does not authorize monetary recovery from a governmental entity under 11 U.S.C. § 547(b) when the entity has not filed a proof of claim. In *Hoffman,* the trustee filed a suit in bankruptcy court against the Connecticut Department of Revenue Services. The debtor had owed the State of Connecticut unpaid taxes, penalties, and interest, and in the month prior to the filing of the debtor's bankruptcy petition, Connecticut's revenue department issued a tax warrant resulting in a payment of $2,100.62. The trustee sought to avoid the payment as a preference under § 547(b) and to recover the amount paid. A plurality of the Supreme Court held, *inter alia,* that Congress did not abrogate the Eleventh Amendment immunity of the states when it enacted 11 U.S.C. § 106(c). The Court concluded that § 106(c) does not authorize a bankruptcy court to issue a money judgment against a *state* that did not file a proof of claim in the bankruptcy proceeding. 492 U.S. at 104, 109 S.Ct. at 2824.

The government contends that the plurality opinion in *Hoffman* applies to federal sovereign immunity in the same way that it applies to state immunity. However, in this Court's view the Supreme Court clearly restricted its holding in *Hoffman* to apply only to the states.[2] More specifically, the plurality noted that "the language in § 106(c) waives the sovereign immunity of the Federal Government so that the Federal government is bound by determinations of issues by the bankruptcy courts even when it did not appear and subject itself to the jurisdiction of such courts." *Id.* at 103, 109 S.Ct. at 2823 (citations omitted).

The government additionally asserts that the trustee is not entitled to monetary recovery under 11 U.S.C. § 106(c)(2). To that end, it relies on Justice White's opinion in *Hoffman* which states that "[t]he language of § 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery." *Id.* 492 U.S. at 102, 109 S.Ct. at 2823. However, given the structure of the opinion, *Hoffman* does not provide precedential authority on this point. The plurality reasoned that to read § 106(c) to permit monetary recovery would expand the limited waiver of sovereign immunity far beyond the boundaries that Congress intended. The four dissenting justices interpreted the Code so as to *allow* for monetary recovery in actions brought under § 106(c)(2). *Id.* at 106–14, 109 S.Ct. at 2824–2829. Although Justice Scalia's concurrence delivered the deciding vote in favor of preserving the states' sovereign immunity, he explicitly stated that he reached his decision on grounds other than those relied upon by Justice White. *Id.* at 105, 109 S.Ct. at 2824.

Both the plurality and dissent in *Hoffman* agreed that "the abrogation of sovereign immunity in § 106(c) should not be read to overwhelm the narrow scope of the voluntary waiver set forth in §§ 106(a) and (b)." *Id.* at 107–8, 109 S.Ct. at 2825–26 (Marshall, J., dissenting). The dissenters argued that Congress intended the sovereigns to be treated in the same way as ordinary creditors. *Id.* at 109, 109 S.Ct. at 2826 (Marshall, J., dissenting). It was additionally noted by the dissenters that a "relatively small number" of Code provisions

---

Court noted in that "while [§ 106] (a) and (b) are not triggered unless the government has asserted a claim against the debtor's estate, (c) has no such requirement." *Id.* at 54 (citation omitted).

2. Nevertheless, courts in other jurisdictions have found that the plurality's analysis in *Hoffman* applies equally to the federal government. *See, e.g., In re Pearson,* 917 F.2d 1215, 1216 (9th Cir.1990); *Small Business Administration v. Rinehart,* 887 F.2d 165, 170 (8th Cir.1989).

allow monetary relief for bankruptcy actions, and the dissenters denied that authorizing monetary relief for actions under § 106(c) would offer "virtually endless opportunities for money judgments against the States." *Id.*

As to the weight to be accorded the Supreme Court's decision in *Hoffman,* "the arguments of Justice Marshall have equal force with the arguments of Justice White, and the lower courts must make independent judgments as to whether Congress intended, by the Bankruptcy Act, to waive the immunity of federal agencies...." *In re Nordic Village, Inc.,* 915 F.2d 1049, 1054 (6th Cir.1990), *cert. granted sub nom. United States v. Nordic Village,* — U.S. —, 111 S.Ct. 2823, 115 L.Ed.2d 994 (1991). Based on the discussion above, and the language of the Code itself, this Court finds that Congress did intend such a waiver. However, as implied by the court in *Nordic Village, Hoffman* is of minimal precedential value where, as in the case at bar, the defense of sovereign immunity is asserted by a federal agency. *Id.*

In *Nordic Village,* the IRS appealed a district court's determination that held it liable to a trustee in bankruptcy for an unauthorized post-petition transfer. The Sixth Circuit reviewed the legislative history of § 106(c) and concluded that any bankruptcy action commenced pursuant to a Code section containing the words "creditor," "entity," or "governmental unit," effectuates a waiver of sovereign immunity. *Id.* at 1052. The *Nordic Village* court went so far as to hold that 11 U.S.C. § 106(c) abolished the defense of sovereign immunity for actions against the government commenced pursuant to a Bankruptcy Code provision containing the word "creditor." *Id.* at 1055. In addition, while noting its preference for the dissent's approach in *Hoffman,* the *Nordic Village* court reasoned:

> While it is true that our reading of section 106 will result in different meanings depending upon whether it is being applied to a state or federal governmental unit, different meanings are an inevitable result of applying two different methods of construction, one dealing

with a constitutional provision protecting our federal system, and the other simply determining the will of Congress to permit the federal government to be sued. The [IRS's] argument erroneously assumes that the *Hoffman* Court's holding that the states are immune to monetary recoveries was reached by the sole and inevitable construction of the provision. The *Hoffman* Court itself did not offer a single reading, but evenly divided between two. The more pertinent argument to the present case is that of the Marshall opinion.

*Id.* at 1055. This Court agrees and finds that 11 U.S.C. § 106(c) entitles the trustee to recover the monies levied by the United States, notwithstanding its assertion of sovereign immunity. Accordingly, the order of the bankruptcy court is affirmed as to this issue.

■ The government also contends that the Bankruptcy Court erred by awarding the trustee interest on the value of the property wrongfully levied. It is well settled that interest cannot be awarded against the United States unless the government has expressly waived its sovereign immunity to allow such interest by contract, statute, or consent of Congress. *Library of Congress v. Shaw,* 478 U.S. 310, 311, 106 S.Ct. 2957, 2958, 92 L.Ed.2d 250 (1986); *Easley v. United States,* 719 F.Supp. 145, 148 (W.D.N.Y.1989). In *Shaw,* the Supreme Court held that only an "express congressional consent to the award of interest separate from a general waiver of immunity to suit" may permit an individual to recover interest in an action against the United States. 478 U.S. at 314, 106 S.Ct. at 2961.

Although respondent correctly argues that a trustee is ordinarily entitled to recover interest on a preference judgment against a transferee, the Bankruptcy Code does not expressly waive the United States' sovereign immunity with specific regard to an award of prejudgment interest. *WJM, Inc. v. Massachusetts Dep't of Public Welfare,* 840 F.2d 996, 1006 (1st Cir.1988); *see also* 4 *Collier on Bankruptcy* para. 550.02 at 550–6 (15th ed.1991). Thus, this Court

finds that the bankruptcy court improperly awarded the trustee interest and reverses the judgment to that extent.

## CONCLUSION

For the reasons set forth above, the order and judgment of the bankruptcy court is affirmed with respect to the avoidance of the transfer of monies improperly levied by the United States; however, the imposition of an award of prejudgment interest against the United States is hereby reversed.

SO ORDERED.